OPINION
The parties herein appeal the February 22, 2001, Judgment Entry of the Stark County Court of Common Pleas issued pursuant to R.C. 149.351, concerning a forfeiture and attorney fees. Respondents-appellants-cross appellees are the Office of the Mayor of the City of Alliance and the City of Alliance [hereinafter appellants]. Relators-appellees-cross appellants are Mary Beth Hunter and Aleida Zellweger [hereinafter appellees].
 STATEMENT OF THE FACTS AND CASE
On March 10, 1999, appellees Mary Beth Hunter and Aleida Zellweger, residents of the City of Alliance, requested the then Mayor of Alliance, Mayor Carr, to permit them to inspect, pursuant to R.C. Section 149.43, "all records and documents belonging to, in the possession, custody or control of, or available to you in the City of Alliance concerning Alliance Community Hospital and the decision of the Hospital Board to useeminent domain in acquiring property." Letter from appellees to Mayor of Alliance, dated March 10, 1999. (Emphasis added) Appellees specifically sought to inspect:
 (1) Minutes of all Meetings of the Alliance Community Hospital Board of Trustees including all information, documents and reports submitted to the Board members.
 (2) All correspondence directed to you or any other official of the City of Alliance from Alliance Community Hospital or any related body.
Id.
On March 29, 1999, Mayor Carr sent a written response to appellees as follows:
 As a member of the Board of Directors of the Citizens Health Association, I do not believe it is my responsibility to maintain the `official records' of the organization, be they public or private. It is my understanding that the Hospital is a not-for-profit, private corporation and would be required to maintain a record of their proceedings, as do other private corporations.
 In addition, I do not believe individual members of Alliance City Council are required to keep minutes of council meetings, copies of ordinances or any other documents since the Clerk of Council is required to prepare and maintain such records.
 The official records of the Hospital are deposited at their facility and if such are required (sic) that is the appropriate place to request them.
On April 28, 1999, the appellees filed a Verified Complaint in Mandamus in this court.[1] An amended Complaint in Mandamus was filed May 20, 1999. The appellees sought a writ of mandamus ordering appellants to make the records sought available to appellees, pursuant to R.C. 149.43, and a forfeiture for any public records improperly destroyed by the Mayor, pursuant to R.C. 149.351. Further, appellees sought attorney fees pursuant to R.C. 149.43(C) and 149.351.
In a deposition, on July 21, 1999, Mayor Carr admitted that she regularly received copies of the Association's Board minutes at her office. She also indicated that the minutes were addressed to her in her official capacity as mayor. However, Mayor Carr testified that after she would receive the minutes at her office, "I took them home and then destroyed them." Hunter v. Carr (Feb. 22, 2000), Stark App. No. 1999CA00134, unreported, 2000 WL 222044. [hereinafter Hunter I]. When questioned further on the issue, Mayor Carr indicated that she took the records home and shredded them. Mayor Carr also testified that she "did not know" why she would take them home and destroy them. Id. Further, Mayor Carr testified that she did not take all of the minutes home and shred them in one instance. Transcript of Proceedings, Vol. 2, 213 — 214. However, while the Mayor confirmed she did this on more than one occasion, she did not know how many times she did so. Id.
In Hunter I, this court determined that minutes delivered to the Mayor of Alliance, in her official capacity as Mayor of the City of Alliance, were public records and subject to disclosure pursuant to R.C. Section149.43. Hunter I. Specifically, we held that "when the mayor received the minutes at issue she was required to maintain them and make them available to the public as required by R.C. Section 149.43. Her failure to maintain those records and her act of removing them from her public office and destroying them in her private home is a violation of the Public Records Laws." Id.
However, we denied appellee's request that appellants be ordered to "produce" the records. As the Mayor testified, those records were destroyed by her. This court entered final judgment in favor of appellees. This court found, further, that it did not have jurisdiction over appellees' request for forfeiture or attorney fees.[2] Id.
Subsequent to our decision in Hunter I, on March 28, 2000, appellees filed a Complaint in Mandamus in the Stark County Court of Common Pleas. In the Complaint, appellees sought a forfeiture of $1,000 per violation of R.C. 149.351, attorney fees and a writ of mandamus directing appellants to make the documents in question available.
An evidentiary hearing on appellees' Complaint was held on August 21 and August 29, 2000. In the subsequent Judgment Entry, filed February 22, 2001, the trial court rendered judgment in favor of appellees and against appellants. Based upon the language used in the request for documents, the trial court reviewed the documents that had been provided by another source, looking for references to eminent domain. The trial court found that the minutes in question contained nine references to eminent domain.[3] The trial court found that the destruction of the documents constituted one violation. Appellees were awarded a $1,000.00 forfeiture each and attorney fees.
It is from the February 22, 2001, Judgment Entry that the parties appeal, raising the following assignments of error:
Issues Raised on Appeal
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED BY NOT BARRING APPELLEES' FORFEITURE CLAIM BECAUSE IT WAS FILED OUTSIDE OF THE APPLICABLE STATUTE OF LIMITATIONS.
Issues Raised on Cross Appeal
HUNTER CROSS-APPEAL ASSIGNMENT OF ERROR
 THE TRIAL COURT MADE AN ERROR OF LAW WHEN IT AWARDED A FORFEITURE OF $1,000.00 TO RELATOR MARY BETH HUNTER UPON A FINDING OF NINE SEPARATE RESPONSIVE RECORDS TO THE PUBLIC RECORDS REQUEST.
 ZELLWEGER CROSS-APPEAL ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN FAILING TO AWARD A FORFEITURE OF ONE THOUSAND DOLLARS TO CROSS-APPELLANT, ZELLWEGER, FOR EACH DOCUMENT AND RECORD DESTROYED BY MAYOR JUDY CARR.
In the sole assignment of error raised on appeal by appellant, appellant argues that appellees' action was barred by the applicable statute of limitations. We disagree.
Appellees' action was brought pursuant to R.C. 149.351, which states:
 (A) All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions. . . .
 (B) Any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section, or by threat of such removal, destruction, mutilation, transfer, or other damage to or disposition of such a record, may commence . . . the following in the court of common pleas of the county in which division (A) of this section allegedly was violated . . .:
. . .
 (2) A civil action to recover a forfeiture in the amount of one thousand dollars for each violation, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action. (Emphasis added)
The statute of limitations for a R.C. 149.351 civil suit is set forth by R.C. 2305.11(A). An action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrues. R.C. 2305.11(A)(1).
There is no contention that appellees were not aggrieved by the destruction of documents. The issue is when the claim accrued and the statute of limitations began to run. Appellant argues that the statute of limitations was triggered when the violation, i.e. the destruction of public records, occurred. Appellant asserts that the documents were destroyed prior to March 16, 1999. Since the Complaint was not filed until March 28, 2000, or over a year beyond the date the public records were destroyed, appellant argues the claim was barred.
Appellees contend that the discovery rule should be applied, thereby extending the time in which to file the Complaint. Appellees contend that the statute of limitations was not triggered until July 21, 1999, when the Mayor admitted during a deposition that she had taken the minutes home and shredded them. Appellant responds that even if the discovery rule is applied, the statute of limitations was triggered March 16, 1999, when a newspaper article, in the Alliance Review, reported that the Mayor acknowledged that she had destroyed the records. Appellant presented evidence that both appellees were aware of the article and its contents. Our review shows that this is a case of first impression.
Revised Code 2305.11(A) states that a forfeiture action shall be commenced within one year after the cause of action accrues. Generally, the statute of limitations for violations of a statute begins to run when the statute is violated. Squire v. Guardian Trust Co. (1947),79 Ohio App. 371. Appellant asks this court to apply this general rule herein, especially in light of the principle that "forfeitures are not favored in law or equity." State v. Lilliock (1982), 70 Ohio St.2d 23,26.
The "discovery rule" has been applied in some exceptional circumstances. In such cases, the statute of limitations begins to run "when a plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." Investors REIT One v.Jacobs (1989), 46 Ohio St.3d 176, 179. In applying the discovery rule, it is the discovery of facts that serves to trigger the statute of limitations. Lynch v. Dial Finance Company (1995), 101 Ohio App.3d 742,747.
However, the discovery rule has been given narrow application and applied in only limited situations. The rule has been applied to some types of actions also listed in R.C. 2305.11(A).[4] (For example, medical malpractice, Oliver v. Kaiser Community Health Foundation
(1983), 5 Ohio St.3d 111, and legal malpractice Skidmore Hall v. Rottman
(1983), 5 Ohio St.3d 210). This court finds no cases in which a reviewing court has applied the discovery rule to a R.C. 149.351 action. In fact, at least one court, in dicta, rejected application of the discovery rule to forfeiture cases stating: "[i]n light of the narrow application of the discovery rule, we cannot, without express legislative or judicial authority, create law where none exists." Hughes v. City ofNorth Olmstead (Jan. 23, 1997), Cuyahoga App. No. 70705, unreported, 1997 WL 25515.
While not argued by the parties, this court notes that there is an alternative analysis applicable to this situation. That analysis is based on the fact that a cause of action does not arise until damages occur. Therefore, the statute of limitations does not begin to run until the damages occur. The Ohio Supreme Court has stated the following:
 [I]n [some] situations . . . the application of the general rule would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence. Wyler v. Tripi (1971), 25 Ohio St.2d 164, 168. In such cases, a cause of action for damages does not arise until actual injury or damage ensues. See Kunz v. Buckeye Union Ins. Co. (1982), 1 Ohio St.3d 79, (cause of action against insurer for failure to obtain coverage accrued at date of loss); Velotta v. Leo Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376, paragraph two of the syllabus ("actual injury" rule applied in action for negligence brought by vendee against builder-vendor of completed residence).
O'Stricker v. Jim Walter Corp. (1983), 4 Ohio St.3d 84, 87 (citations omitted).
We applied this same reasoning in Fritz v. Bruner Cox, LLP (Stark, 2001), 142 Ohio App.3d 664, 667 (citing Gray v. Estate of Barry (1995),101 Ohio App.3d 764.) In Fritz we found that a cause of action did not accrue against accountants until there had been a finding made against the plaintiffs by the Internal Revenue Service of money and penalties due. Therefore, the statute of limitations did not start running when the accountants committed negligence. It only started to run when the damages occurred.
In the case sub judice, we find there are persuasive reasons to deviate from the application of the general rule in instances where public records have been removed, destroyed, mutilated or otherwise inappropriately transferred, damage or disposed of. The purpose of the Ohio Public Records Act, R.C. 149.43, is to allow citizens access to public records, thereby exposing government activity to public scrutiny.State ex rel. Long v. Cardington Village Council (2001), 92 Ohio St.3d 54,56 and State ex rel. Sensel v. Leone (March 31, 1999), Butler App. No. CA97-05-102, unreported, 1998 WL 54392, reversed on other grounds (1999), 85 Ohio St.3d 152. The exposure of government activity to public scrutiny is essential to the proper working of a democracy. Sensel,supra. (citing State ex rel. Gannett Satellite Network, Inc. v. Petro(1997), 80 Ohio St.3d 261, 264; State ex rel. WHIO-TV7 v. Lowe (1997),77 Ohio St.3d 350, 355). "Scrutiny of public records allows citizens to evaluate the rationale behind government decisions so government officials can be held accountable." Sensel (citing White v. ClintonCty. Bd. Of Commrs. (1996) 76 Ohio St.3d 416, 420).
Revised Code 149.351 is a deterrent to the improper disposition of public records. Since the improper disposition of the document is not likely to be made public, or may be kept secretive, the public may not be aware of the act until someone seeks to review an improperly disposed of record. Further, the need for the record may not manifest itself immediately. Lastly, we note that a governmental body may not be forthcoming in acknowledging the wrongful disposition. A significant amount of time may pass between the wrongful act and the point the wrongful act is discovered. Without application of a discovery rule, a statute of limitations may expire before the wrongful conduct could be discovered. See Oliver v. Kaiser Community Health Foundation (1983),5 Ohio St.3d 111 (examines and articulates policy considerations for adoption of "discovery rule" in medical malpractice actions). If a party's opportunity to bring a forfeiture action pursuant to R.C. 149.351
passes before one can discover the wrongful act, the deterrent effect of the statute is significantly lessened or even lost. Surely if we protect the interests of those individuals injured by medical or legal malpractice through a latent injury, we should protect the public from the wrongful disposition of public records. Such records allow the public to evaluate the actions of government which is fundamental to the operation of a democracy.
Based on the preceding reasons, we conclude that the general rule, that the statute of limitations begins to run when a wrongful act occurs, should not be applied in the case sub judice. Either the "discovery" rule or the "occurrence of damage" rule should be applied. The statute of limitations begins to run on the same date in this case regardless of which of these two rules is applied.
If the discovery rule is applied, the statute of limitations was triggered when appellants discovered, or should have discovered, that the public records they sought to review had been destroyed. In this case, that date was July 21, 1999, when the Mayor admitted the public records had been destroyed. Prior to that date, the Mayor failed to admit publicly or directly to appellees that the records had been destroyed when given an opportunity to do so. Appellees' initial public records request was made through a letter, dated March 10, 1999. At a subsequent Alliance City Council meeting, the Mayor was asked for a response to the March 10, 1999, public records request.[5] However, the Mayor did not respond in any manner.
On March 26, 1999, appellee Hunter's attorney sent a letter to the Mayor. The letter referenced the March 10, 1999, public records request and noted the Mayor's lack of response to that request. The letter also expressed concern over the March 16, 1999, Alliance Review article which reported that the Mayor had destroyed the records.
The Mayor responded in a letter dated March 29, 1999. In the letter, the Mayor stated that it was not the Mayor's responsibility to maintain the official records sought. The Mayor claimed that the hospital was the appropriate place to request the desired public records.
We reject appellants' contention that the statute of limitations was triggered when a newspaper article appeared reporting that the Mayor had acknowledged that she destroyed the documents sought. While the record may demonstrate that the appellees were aware of the article and its contents, we find that the newspaper article was insufficient in this case to provide actual or constructive notice to a reasonable person that R.C. 149.351 had been violated. See Hughes v. City of North Olmstead
(Jan. 23, 1997), Cuyahoga App. No. 70705, unreported, 1997 WL 25515. Newspaper articles are unreliable hearsay. Cf. State v. Self (1996),112 Ohio App.3d 688, 694. In addition, as pointed out above, the Mayor never confirmed the information in the newspaper article until the Mayor's July 21, 1999, deposition.
If the occurrence of damage rule is applied, we find that the damages also occurred on July 21, 1999. That is because we find that damages did not occur until after the appellees had made a request for the public records and had been notified they would not be getting them because the records had been destroyed. In other words, as the trial court found, "[appellees] became aggrieved parties within the meaning of R.C. 149.351
when they made a proper request for public records and such records were not made available to them due to the fact that Mayor Carr had destroyed them." Judgment Entry, filed February 22, 2001, Findings of Fact and Conclusions of Law, para. 6.
Therefore, we find that the statute of limitations was triggered, under either analysis, on July 21, 1999. This gave the appellees until July 21, 2000, to file an action for forfeiture.[6] Since the Complaint was filed prior to July 21, 2000, on March 28, 2000, appellant's assignment of error is overruled.
 CROSS APPEAL ISSUES
On cross appeal, the appellees raise the issue of the number of violations that occurred, the total amount of forfeiture to be awarded and how that sum should be awarded to the two appellees. The trial court found that the Mayor's conduct constituted one violation and awarded $1,000.00 to each of the appellees. Appellee Hunter maintains that the trial court found nine minutes (public records), directly responsive to appellees' public records request, had been destroyed. Therefore, appellee Hunter argues that the appellees should have been awarded $9,000.00 each. However, appellee Zellweger contends that the request for documents encompassed each month of the Hospital's Minutes and Agendas from January, 1997, through March 25, 1999, totaling 54 documents. Therefore, since 27 agendas and 27 minutes, or 54 documents, were generated during the 27 months involved, appellee Zellweger argues that appellees should be awarded $54,000.00.
The interpretation of a statute is a question of law. Neiman v.Donofrio (1992), 86 Ohio App.3d 1, 3. An appellate court's review of the interpretation and application of a statute is de novo. State v.Sufronko (1995), 105 Ohio App.3d 504, 506. Additionally, an appellate court does not give deference to a trial court's determination when making its review. Id. "In construing a statute, a court's paramount concern is the legislative intent in enacting the statute." State v.S.R. (1992), 63 Ohio St.3d 590, 594. In order to determine the legislative intent, a court must first look to the statute's language.Shover v. Cordis (1991), 61 Ohio St.3d 213, 218, overruled on other grounds (1998), 81 Ohio St.3d 506. "Words used in a statute are to be taken in their usual, normal and customary meaning." Pennington v.Gundler (1996), 75 Ohio St.3d 171, 173 (citing R.C. 1.42). Further, unless a statute is ambiguous, the court must give effect to the plain meaning of a statute. Id. (citing State v. Waddell (1995),71 Ohio St.3d 630, 631).
From a plain reading of R.C. 149.351, we find that the trial court committed an error of law in the award of the forfeiture. Revised Code 149.351 states the following:
 Any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section, . . . may commence . . . the following in the court of common pleas of the county in which division (A) of this section allegedly was violated . . .:
. . .
 (2) A civil action to recover a forfeiture in the amount of one thousand dollars for each violation, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action.
R.C. 149.351(B)(2).
The definition of "`[r]ecords' includes any document, device, or item . . . which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).
By considering the definition of records in light of R.C. 149.351, we conclude that a violation is the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a document, device or item, which documents the organization, functions, policies, decisions, procedures, operations, or other activities of the governmental office.
The minutes destroyed were previously held by this court to be public records. What we did not address in that previous decision was whether the agendas were public records. We note that there is a good argument to be made that these agendas are not records under R.C. 149.011(G) in that they do not "document" anything. They merely set forth an outline of what is expected to be covered at a meeting. On the other hand, we can envision a scenario in which it may be important to know what was in an agenda sent to a public official prior to a meeting. It may be important because a public official may take some sort of action based on the knowledge of what he or she believes will be discussed at the upcoming meeting. Therefore, we find that an agenda of a meeting does document what is expected to be covered at a meeting. And, since in the case sub judice, these agendas were received by the mayor in the course of her public duties, we find them to be public records under R.C.149.011(G).
Even though we conclude that the agendas are public records, we do not conclude that they are separate public records from the minutes. We find that the agenda and minutes from each of the meetings forms the record for each of the meetings in the case sub judice. The destruction of all or of any part of an agenda and minutes set would constitute one violation of the statute. More simply stated, if the agenda and minutes of a meeting were destroyed, that is one, not two violations of the statute. The meeting itself is the relevant unit of measure, not the number of documents which describe the meeting. The documents which contain a description of what is supposed to happen at a meeting and what actually did happen at the meeting are the record of the meeting. Therefore, we disagree with appellee Zellweger who contends that the minutes and the agenda from each meeting should constitute two public records, even though we agree that the agenda is a public record.
Under the preceding analysis, the most violations of R.C. 149.351
which could be found are twenty-seven since the agendas and minutes from twenty-seven meetings were destroyed. The trial court did not find twenty-seven violations. The trial court did not award a separate amount for each set of minutes and agendas that were shredded. Instead, the trial court treated the "failure to comply with each of the Relators'requests a single violation" and found each Relator entitled to an award of One Thousand Dollars ($1,000.00). (Emphasis added.) The trial court relied on Beacon Journal Publishing Co. v. Stow (1986), 25 Ohio St.3d 347. The law has been modified since that decision, and we do not agree with the conclusion of the trial court. We find that a forfeiture award which is based on the number of requests made for public records, is no longer mandated by the statute and does not comply with the purpose of the current statute. R.C. 149.351 says that records shall not be destroyed, and an aggrieved person may file suit for a forfeiture of $1,000.00 for each violation of the statute. We find each violation in the case sub judice means each public record that is destroyed. The relevant inquiry is not how many requests were made and not complied with, but how many public records were destroyed which had been requested.
The appellees in this case requested the records concerning Alliance Community Hospital and the decision of the Hospital Board to use eminent domain in acquiring property. They did not request all records of the Hospital Board. The trial court found a total of nine references to eminent domain in the minutes of meetings for the time period from January, 1997, through March 25, 1999. We are unable to enter judgment based on this finding. First of all, we cannot tell if agendas were considered by the trial court. Secondly, we cannot tell how many minutes were involved in those nine references. It is possible that, during the course of one meeting, more than one reference to eminent domain was made. Thirdly, we cannot determine how many of the references to eminent domain were references concerning the decision of the Hospital Board to acquire property. Therefore, we reverse and remand this matter to the trial court for it to determine how many public records (an agenda and minutes from a meeting of the Hospital Board) that dealt with the decision of the Hospital Board to use eminent domain to acquire property, were destroyed by Mayor Carr. A $1,000.00 forfeiture shall be awarded for each public record that was destroyed by Mayor Carr which had also been requested by the appellees.
The next question is how the forfeiture should be awarded since, in this case, we have two relators (appellees). We find that the question is answered by our determination that R.C. 149.351 is punitive in nature and not designed to compensate the aggrieved party. Punitive awards are designed to punish the guilty party and deter the prohibited conduct. See Digital Analog Design Corp. v. North Supply Co. (1992),63 Ohio St.3d 657, 660, rejected on other grounds by Zoppo v. HomesteadIns. Co. (1994), 71 OS3 552, 557; Detling v. Chockley (1982),70 Ohio St.2d 134. Compensatory damages, on the other hand, are awarded to make the victim whole. Digital Analog Design Corp. v. North SupplyCo., supra.
In that the statute in question is punitive in nature, designed to deter the destruction of public records, we find that the award of any forfeiture must be shared among the relators. Therefore, since we have two relators in this case, any forfeiture awarded should be divided among the appellees, the relators, in equal shares.
This matter is, therefore, reversed and remanded to the trial court. The trial court is instructed to make an award of damages in accordance with this opinion. The total forfeiture shall then be ordered to be split equally between the appellees.
Appellees' cross assignments of error are sustained, in part, and overruled, in part.
Therefore, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed in part, and remanded for further proceedings consistent with this opinion. Costs to be paid by respondents.
By Edwards, P.J., Hoffman, J. and Wise, J. concur.
[1] R.C. 149.43(C) provides for the mandamus remedy.
[2] This court sua sponte dismissed count two, seeking forfeiture and attorney fees, pursuant to R.C. 149.351, of appellees' Complaint for want of jurisdiction. See R.C. Section 149.351(B), supra.
[3] The trial court found that there were eight references to eminent domain in the 1998 minutes, one reference in the 1999 minutes and no such references in the 1997 minutes. Although these documents were received by the trial court, the documents were not provided to the parties and were placed under seal.
[4] R.C. 2305.11(A)(1) states, in relevant part that "an action for libel, slander, malicious prosecution, or false imprisonment, an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim, or an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrues. . . ."
[5] While the date of the City Council Meeting is unclear, it was after the initial March 10, 1999, request and was possibly on March 16, 1999.
[6] We note that we do not intend to imply that it is only through an admission in a sworn deposition that the statute of limitations may be triggered. However, under the facts of the case herein, no action occurred prior to the deposition sufficient to trigger the statute of limitations.