[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 54.]

THE STATE EX REL. LONG *v.* COUNCIL OF THE VILLAGE OF CARDINGTON ET AL.

[Cite as *State ex rel. Long v. Cardington Village Council*, 2001-Ohio-130.]

*Public records—Mandamus sought to compel respondents Cardington, Ohio, et al. to prepare, file and maintain full and accurate minutes and to conduct all meetings in public, except for properly called executive sessions—Writ granted—Attorney fees and costs awarded.*

(No. 00-857—Submitted March 13, 2001—Decided June 13, 2001.)

IN MANDAMUS.

———————————

*Per Curiam.*

{¶ 1} Respondent Council of the Village of Cardington, Ohio, and its members, respondents Robert Doolin, Cecil Maxwell, Laurie Plotner, David Sheets, Joel Sherman, and Vicki Wise, conduct public business of the village through prearranged discussions by a majority of the village council members. The village council characterizes these prearranged discussions as regular sessions, special sessions, work sessions, joint sessions, personnel committee meetings, and finance committee meetings. Respondent Cardington Mayor William Christian attends and presides over village council meetings, and respondent Cardington Clerk/Treasurer Belva Bowers prepares minutes for the meetings.

{¶ 2} On May 9, 2000, after becoming dissatisfied with respondents' responses to her request for certain public records and to her claims that respondents had violated Ohio's Sunshine Law, R.C. 121.22, relator, Mary Long, a village resident and former village council member, filed a complaint for a writ of mandamus in this court.

{¶ 3} In her complaint, Long claimed that village council minutes for meetings held by respondents were inadequate and incorrect. More specifically,

Long objected to the council minutes of the January 3, 2000 work session, the January 3, 2000 joint session, the January 13, 2000 work session, the January 17, 2000 regular session, the January 17, 2000 finance committee meeting, the January 24, 2000 personnel committee meeting, the January 25, 2000 personnel committee meeting, the January 26, 2000 special session, the February 22, 2000 finance committee meeting, the March 20, 2000 regular session, and the March 20, 2000 finance committee meeting.

{¶ 4} For example, the minutes of the January 3 council meetings erroneously included Long's name in the roll call, but she was not a member of the village council at that time. In addition, the January 3 council work session included the following generalized statements:

"The Mayor discussed the plans for this meeting. The Mayor's belief in how committee chairs will operate. * * * There was a discussion regarding the wet retention area at Bantry Farms. Future Developers must not have the same engineer as the village."

{¶ 5} Long further claimed that minutes for the January 13 work session, the January 17 regular session, the January 26 special session, and the March 20 regular session failed to state with the requisite specificity the purpose or purposes of convening executive sessions (*i.e.*, meetings closed to the public) during the council's sessions. Instead, the minutes for these meetings referred to executive sessions for the purposes of "personnel and finances," "personnel," and "personnel matters."

{¶ 6} In addition, Long asserted that minutes of the January 17 finance committee meeting, the January 24 personnel committee meeting, the January 25 personnel committee meeting, the February 22 finance committee meeting, and the March 20 finance committee meeting did not record motions or votes.

{¶ 7} Long requested a writ of mandamus to compel respondents to prepare, file, and maintain full and accurate meeting minutes for all meetings and executive

sessions, including those meetings specified in her complaint, and to compel respondents to conduct all meetings in public except for those meetings that properly constitute executive sessions. Long also requested an award of costs and attorney fees under R.C. 121.22(I) and 149.43(C).

{¶ 8} Respondents Bowers, Christian, Doolin, and Maxwell filed an answer and a motion for judgment on the pleadings. In the motion, they claimed that this court lacks original jurisdiction over an action for a mandatory injunction in common pleas court under R.C. 121.22(I) and that Long has, in fact, brought such an action in the Morrow County Court of Common Pleas. Respondents Cardington Village Council, Plotner, Sheets, Sherman, and Wise failed to file a timely response to Long's complaint, and Long moved for a default judgment against them.

{¶ 9} After mediation failed to resolve the parties' dispute, this case was returned to the regular docket. We denied the motions for judgment on the pleadings and for default judgment and granted an alternative writ. 90 Ohio St.3d 1415, 735 N.E.2d 455.

{¶ 10} The parties then filed evidence and briefs. Respondents' evidence included an affidavit of respondent Plotner in which she stated that council meetings, with the exception of executive sessions, are audiotaped, that the tapes are available to the public, and that the minutes are prepared from the tapes and notes of the meetings. Respondents subsequently filed audiotapes and transcripts of audiotapes of the following council meetings: the January 3 joint session, the January 17 regular session, the January 26 special session, and the March 20 regular session.

{¶ 11} This cause is now before the court for a consideration of the merits.

{¶ 12} Long requests a writ of mandamus to compel respondents to prepare, file, and maintain full and accurate minutes for all meetings and to conduct all meetings in public except for properly called executive sessions.

{¶ 13} Ohio's Sunshine Law, R.C. 121.22, requires the preparation, filing, and maintenance of a public body's minutes. *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 423, 667 N.E.2d 1223, 1229; R.C. 121.22(C). Once these minutes are prepared, Ohio's Public Records Act, R.C. 149.43, requires the public body to permit public access to the minutes upon request. *State ex rel. Fairfield Leader v. Ricketts* (1990), 56 Ohio St.3d 97, 101, 564 N.E.2d 486, 491; see, also, R.C. 121.22(C). Finally, R.C. 733.27(A) provides that the village clerk "*shall* attend all meetings of the legislative authority of the village, and *keep a record of its proceedings*." (Emphasis added.)

{¶ 14} Construing R.C. 121.22, 149.43, and 733.27 *in pari materia*, respondents, the Cardington Village Council, its members, the village clerk, as well as the mayor, who presides over the village council meetings, have a duty to prepare, file, and maintain full and accurate minutes for council meetings, and to make them available for public inspection. See *State ex rel. Gains v. Rossi* (1999), 86 Ohio St.3d 620, 622, 716 N.E.2d 204, 207 ("Under the applicable rule of statutory construction, all statutes relating to the same general subject matter must be read *in pari materia*"); cf. *White*, 76 Ohio St.3d 416, 667 N.E.2d 1223, at paragraph one of the syllabus ("R.C. 121.22, 149.43, and 305.10, when read together, impose a duty on all boards of county commissioners to maintain a full and accurate record of their proceedings").

{¶ 15} Respondents contend that they fully complied with these duties to prepare and make available minutes by audiotaping council meetings and making the audiotapes of the meetings available to the public. In *White*, 76 Ohio St.3d at 424, 667 N.E.2d at 1229, we observed that audio recordings could be a "legitimate means of satisfying the requirements of R.C. 121.22 * * *." Nevertheless, for the following reasons, respondents' contention that their audiotapes complied with R.C. 121.22, 149.43, and 733.27 is meritless.

{¶ 16} First, respondents never treated these audiotapes as the official minutes of their meetings. Instead, the typewritten minutes are prepared from the tapes as well as from notes taken during the meetings. At the beginning of regular council meetings, the council reviews and approves the written minutes, not the tapes, of prior meetings.

{¶ 17} Second, respondents did not tape all of their meetings. For example, respondents have not introduced tapes of any of the village council's finance or personnel committee meetings, or for that matter, any council meetings other than the four filed in this proceeding.

{¶ 18} Third, at the April 17, 2000 village council meeting, the council unanimously voted to erase tapes of council meetings after the written minutes had been approved. If the tapes were truly the minutes required by R.C. 121.22, 149.43, and 733.27, they would be maintained, not quickly destroyed. See R.C. 121.22(C) ("The minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection").

{¶ 19} Finally, even if the few tapes and accompanying transcripts provided by respondents could be considered minutes, they contain too many inaudible portions to satisfy the requirement of a full and accurate record. For example, the tape of the January 3 joint session contains approximately thirteen instances in which the tape cannot be understood, and the tape of the January 17 regular session contains approximately twenty-six inaudible portions. Notably, absent a transcript of each audiotape, a member of the public might not know the identities of the speakers.

{¶ 20} Therefore, in determining whether respondents complied with their statutory duties, we consider the written minutes provided to Long rather than the audiotapes.

{¶ 21} In analyzing these minutes, it is apparent that they do not provide a full and accurate record of council proceedings. The challenged minutes contain

admitted inaccuracies that have never been corrected. For example, the minutes for the January 3 council meetings erroneously include Long's name in the roll call of council members even though she was no longer a council member on that date.

{¶ 22} In addition, the minutes do not include sufficient facts to understand and appreciate the rationale behind some of the village council's decisions. "[F]ull and accurate minutes must contain sufficient facts and information to permit the public to understand and appreciate the rationale behind the relevant public body's decision." *White*, 76 Ohio St.3d at 424, 667 N.E.2d at 1229. The minutes of the January 3 work session, for example, state that future developers "must not have the same engineer as the village," but there is no recorded vote ordering this, nor is there any rationale offered to support this apparent council decision. And the minutes of the January 26 special session indicate that respondent Sherman was appointed council member but include no rationale for the appointment or a properly scheduled executive session under R.C. 121.22(G)(1).

{¶ 23} In fact, respondents' minutes of finance and personnel committee meetings do not include motions and votes, much less the detail to meet the comprehensive requirements of R.C. 121.22. See *White*, 76 Ohio St.3d at 423, 667 N.E.2d at 1229 (Minutes of any meeting of a public body besides properly called executive sessions "certainly should not be limited to a mere recounting of the body's roll call votes"). For example, the minutes for the January 17 finance committee meeting state merely that "[a] brief meeting was held to sign off on all accounts" without specifying motions, votes, or details concerning the accounts. Similarly, the minutes of the February 22 finance committee meeting state that the committee "went over the budget page by page for the final reading at the next scheduled Council Meeting," without mentioning the budget items or any motions or votes.

{¶ 24} Respondents counter that they need not provide full and accurate minutes of any committee meetings because the village council does not conduct

6

official business at these meetings, and they do not constitute council meetings. Respondents' assertion is meritless. R.C. 121.22(C) mandates that public officials, when meeting to consider official business, conduct those meetings in public. The R.C. 121.22(B)(2) definition of "meeting," which is required by R.C. 121.22(A) to be "liberally construed" in favor of open meetings, requires (1) a prearranged discussion, (2) a discussion of the public business of the public body, and (3) the presence at the discussion of a majority of the members of the public body. *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 543, 668 N.E.2d 903, 906. Liberally construing these requirements, committee meetings are meetings for purposes of R.C. 121.22 because they are prearranged discussions of the public business of a public body by a majority of the public body's members. See R.C. 121.22(A). In fact, respondents conceded this in their pleading. And as they further admitted, R.C. 121.22(B)(1)(b) includes any committee or subcommittee of a legislative authority of a political subdivision, *e.g.*, a village council, as a "public body" for purposes of the Sunshine Law, so that the council's personnel and finance committees constitute public bodies in that context.

{¶ 25} " '[W]here, as here, the members of a public body agree to attend, in their official capacity, a meeting where public business is to be discussed and a majority of the members do attend, R.C. 121.22(C) necessitates that minutes of the meeting be recorded.' " *Cincinnati Post*, 76 Ohio St.3d at 543, 668 N.E.2d at 905, quoting *Fairfield Leader*, 56 Ohio St.3d at 102, 564 N.E.2d at 491.

{¶ 26} Furthermore, the minutes reflect that respondents often failed to specify the appropriate statutory purpose or purposes before conducting private, *i.e.*, executive sessions. If a public body decides to conduct an executive session for the purpose of considering one or more of the matters listed in R.C. 121.22(G)(1) concerning personnel, the public body must specify in its motion and vote those listed matters that it will discuss in the executive session. R.C. 121.22(G)(1)[1]; 1988 Ohio Atty. Gen. Ops. No. 88-029, 2-120 to 2-121, fn. 1.

**{¶ 27}** By using general terms like "personnel" and "personnel and finances" instead of one or more of the specified statutory purposes, respondents violated R.C. 121.22(G)(1). See, *e.g., Jones v. Brookfield Twp. Trustees* (June 30, 1995), Trumbull App. No. 92-T-4692, unreported, 1995 WL 411842 ("a reference to 'police personnel issues' does not technically satisfy [the R.C. 121.22(G)(1)] requirement because it does not specify which of the approved purposes was applicable in this instance").

**{¶ 28}** In fact, even if we were to accept respondents' invitation to consider the provided tapes and transcripts in order to "fill in the blanks" of their official minutes, no tapes were provided of the January 13 regular session, the tape of the January 17 council meeting indicates that the motion to go into executive session that was approved by council only generally referred to an executive session for "personnel," and the tape of the January 26 motion merely reiterated the laundry list of possible matters from R.C. 121.22(G)(1) without specifying which of those purposes would be discussed in executive session.

**{¶ 29}** Therefore, respondents have not complied with R.C. 121.22, 149.43, and 733.27.

**{¶ 30}** Respondents finally contend that Long is precluded from seeking extraordinary relief in mandamus because she has an adequate legal remedy by way of her R.C. 121.22(I)[2] action in the Morrow County Court of Common Pleas for a mandatory injunction to enforce Ohio's Sunshine Law provisions.

**{¶ 31}** An action for a mandatory injunction, however, is an *extraordinary* remedy that does not preclude a writ of mandamus to enforce R.C. 121.22 and 149.43. See *Fairfield Leader*, 56 Ohio St.3d at 102, 564 N.E.2d at 492 ("R.C. 121.22[I] * * * provides The Leader no adequate alternative to the writ"); cf. *Hardesty v. River View Local School Dist. Bd. of Edn.* (1993), 63 Ohio Misc.2d 145, 149, 620 N.E.2d 272, 274 (R.C. 121.22[I] does not provide the exclusive remedy for a person adversely affected by the failure of a governmental body to

comply with the Sunshine Law); see, also, *State ex rel. Levin v. Schremp* (1995), 73 Ohio St.3d 733, 735, 654 N.E.2d 1258, 1259 (mandatory injunction is not an adequate legal remedy precluding extraordinary relief in mandamus); *State ex rel. Findlay Publishing Co. v. Schroeder* (1996), 76 Ohio St.3d 580, 582, 669 N.E.2d 835, 838 ("[P]ersons seeking public records pursuant to R.C. 149.43[C] need not establish the lack of an adequate remedy at law in order to be entitled to a writ of mandamus").

{¶ 32} Based on the foregoing, Long has established her entitlement to the requested extraordinary relief in mandamus. She is also entitled to an award of attorney fees and costs. R.C. 149.43(C); cf. R.C. 121.22(I)(2). Despite respondents' attempt to portray Long as an embittered ex-council member who condoned a comparable lack of detail in meeting minutes during her tenure, it remains evident that these facts do not excuse respondents' continued noncompliance with the applicable statutes. A contrary holding would constitute a disservice to the public, not simply Long. This action has consequently resulted in a public benefit, and respondents failed to comply with R.C. 121.22, 149.43, and 733.27 even when inaccuracies and insufficiencies in the minutes were manifest. See *White*, 76 Ohio St.3d at 424, 667 N.E.2d at 1229; cf. R.C. 121.22. We consequently order Long to submit a bill and documentation in support of her request for attorney fees and costs, in accordance with the guidelines set forth in DR 2-106(B).

{¶ 33} As we observed in *White*, 76 Ohio St.3d at 419, 667 N.E.2d at 1226, "One of the strengths of American government is the right of the public to know and understand the actions of their elected representatives. This includes not merely the right to know a government body's final decision on a matter, but the ways and means by which those decisions were reached." Respondents have circumvented these crucial rights by preparing and maintaining insufficient and inaccurate minutes.

**{¶ 34}** Therefore, we grant a writ of mandamus to compel respondents to prepare, file, and maintain full and accurate minutes and to conduct all meetings in public, except for properly called executive sessions. Cf. *State ex rel. Inskeep v. Staten* (1996), 74 Ohio St.3d 676, 678, 660 N.E.2d 1207, 1209, where we granted similarly expansive relief in an open-meetings case, and R.C. 121.22(I), which permits a broad mandatory injunction to compel violators of the Sunshine Law to comply with its provisions.

*Writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

LUNDBERG STRATTON, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting**.

**{¶ 35}** I respectfully dissent. I believe that R.C. 121.22(I)(1) provides the relator with an adequate remedy in the ordinary course of the law; therefore, I would deny the writ.

**{¶ 36}** Mandamus may not be issued when there is a plain and adequate remedy in the ordinary course of the law. R.C. 2731.05. Mandamus is intended for use when other remedies are incapable of affording relief. *State ex rel. Phelps v. Gearheart* (1922), 104 Ohio St. 422, 135 N.E. 606. It is to be used when there is no other legal remedy; it is not to be used instead of, or in addition to, other available remedies.

**{¶ 37}** This court has held that in order to foreclose relief in mandamus, an alternative remedy to mandamus must be complete, beneficial, and speedy. *State ex rel. Natl. Elec. Contrs. Assn., Ohio Conference v. Ohio Bur. of Emp. Serv.* (1998), 83 Ohio St.3d 179, 183, 699 N.E.2d 64, 67; *State ex rel. Walker v. Lancaster City School Dist. Bd. of Edn.* (1997), 79 Ohio St.3d 216, 218, 680 N.E.2d 993, 995. The remedy must be appropriate to the circumstances and secure relief

for the complaining party. See *State ex rel. Phelps v. Gearheart*, 104 Ohio St. 422, 135 N.E. 606.

{¶ 38} R.C. 121.22(I) was enacted specifically to provide a remedy for violations of R.C. 121.22. It allows *any* person to bring an action in common pleas court within two years of an alleged or threatened violation of Ohio's Sunshine Law. If the complaining party proves a violation or a threat thereof, the court shall issue an injunction to force compliance. This remedy is specifically tailored to the circumstances alleged by relator and designed to afford the relief she seeks. R.C. 121.22(I)(1) affords a complete, beneficial, and speedy remedy. Therefore, it satisfies the objective of a plain and adequate remedy at law and constitutes an alternative remedy to mandamus relief in this action. In fact, relator has concurrently filed an R.C. 121.22(I) action in common pleas court. Therefore, she is not without an adequate legal remedy.

{¶ 39} The majority rejects this argument on the basis that injunction is an "extraordinary" remedy. In *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, Chief Justice Taft disagreed with the majority's conclusion that a mandatory injunction is an extraordinary remedy that cannot be an adequate remedy in the ordinary course of the law. He believed that a mandatory injunction *would* be sufficient reason for the court to deny a writ of mandamus. *Id*. at 165-170, 40 O.O.2d at 156-159, 228 N.E.2d at 649-653. In cases decided prior to 1967, this court had denied a writ of mandamus because the relator had an adequate remedy by way of mandatory injunction. See, *e.g*., *State ex rel. Cent. Serv. Station v. Masheter* (1966), 7 Ohio St.2d 1, 36 O.O.2d 1, 218 N.E.2d 177; *State ex rel. Adams v. Rockwell* (1957), 167 Ohio St. 15, 3 O.O.2d 433, 145 N.E.2d 665. Likewise, this court affirmed or reversed judgments of courts of appeals because the lower courts had or should have denied a writ of mandamus when the relator had an adequate remedy by way of mandatory injunction. *State ex rel. Danford v. Karl* (1967), 9 Ohio St.2d 79, 38 O.O.2d 203, 223 N.E.2d 602;

*State ex rel. Durek v. Masheter* (1967), 9 Ohio St.2d 76, 38 O.O.2d 202, 223 N.E.2d 601.

{¶ 40} I believe that *Pressley* was wrongly decided when it, in effect, overruled these cases. The rationale of *Pressley* is illogical when injunctive relief is, in fact, an adequate legal remedy as in this case. I would adopt the reasoning of Chief Justice Taft's dissenting opinion as to why a statutory mandatory injunction is an adequate legal remedy and correct the path where *Pressley* has led us. Where the General Assembly has expressly provided for injunctive relief for a violation or alleged violation of R.C. 121.22, I believe that a writ of mandamus is not warranted.

{¶ 41} R.C. 121.22(C) requires public officials to conduct official business at meetings open to the public, and to prepare and maintain minutes of public meetings. R.C. 121.22(I)(1) authorizes any person to bring an action to enforce the provisions of R.C. 121.22. I believe that the General Assembly intended for courts at the local level to adjudicate violations of R.C. 121.22(C). This is more efficient, reliable, and fair. A case in which there is an alleged violation of R.C. 121.22 is very fact-oriented. I believe that a local tribunal would be more familiar with and have a greater understanding of local reporting procedures, and thus would be able to provide a more thorough and equitable remedy under R.C. 121.22(I). Unlike cases where a relator is seeking an order for a public body to *produce* records, here the relator is merely asking that respondents be required to prepare, file, and maintain minutes of meetings, and to hold all meetings in public except for executive sessions. While I do not minimize the importance of recordkeeping and of the mandates of R.C. 121.22, if we accept jurisdiction of this mandamus action, then we will be asked to review every dispute, no matter how minuscule, that arises about the adequacy of minutes. These issues are very fact-driven and much more suited to the fact-finding role that the trial court plays. I do not believe that this court should become a referee over the details and accuracy of city council minutes.

{¶ 42} The General Assembly had a purpose for enacting R.C. 121.22(I). If we grant jurisdiction in every mandamus action that seeks relief under R.C. 121.22(I), then we are rendering meaningless the remedy afforded by R.C. 121.22(I) and allowing the parties to bypass the statutory remedy. The extraordinary remedy of mandamus may not be utilized as a substitute or to supplant another remedy where there is available to the relator an adequate remedy in the ordinary course of the law.

{¶ 43} I believe that mandamus, an extraordinary remedy, should be available only when other procedures are incapable of affording relief. Here, relator has an adequate remedy in the ordinary course of law that is complete, beneficial, and speedy. Therefore, I respectfully dissent.

————————————

*Alden, Taylor & Durkin, LLC*, *Randolph W. Alden* and *James R. Taylor*, for relator.

*Manos, Martin, Pergram & Deitz Co., L.P.A.*, *Dennis L. Pergram* and *James M. Deitz*, for respondents.

————————————

1. R.C. 121.22(G) provides:

"* * * [T]he members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:

"(1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official * * *. * * * If a public body holds an executive session pursuant to division (G)(1) of this section, the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in division (G)(1) of this section are the purposes for which the executive session is to be held, but need not include the name of any person to be considered at the meeting."

2. R.C. 121.22(I)(1) provides:

"Any person may bring an action to enforce this section. An action under division (I)(1) of this section shall be brought within two years after the date of the alleged violation or threatened violation. Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions."